UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIKS MAMONOVS | No. 3:20-cr-00110 (VAB)<br><br><br>December 21, 2022 |

**GOVERNMENT'S MEMORANDUM Re: DETENTION OR RELEASE**

On December 14, 2022, the Court entered an Order requiring that the parties file written briefs supporting their positions relative to detention or release. The Government respectfully submits this memorandum to address the legal standards, the factual issues of the case, and the concerns the Government understands the Court may have. Although the Government would not object to a release of Mr. Mamonovs within the United States provided that conditions are put in place that would reasonably assure Mr. Mamonovs' appearance as required, the Government is nevertheless concerned that the current proposal is insufficient. Furthermore, the Government is concerned that if the Court were to order Mr. Mamonovs' release at this time, I.S. Immigration and Customs Enforcement ("ICE") may lodge a detainer due to Mr. Mamonovs' lack of legal status and criminal charges resulting not only in his continued detention, but also potentially serving as an obstacle to the criminal case.

**I.      Relevant Background**

On July 7, 2022, a federal grand jury sitting in the District of Connecticut returned a Superseding Indictment charging Mamonovs and others with a number of felony offenses. In particular, Mamonovs was charged with (1) Conspiracy to Illegally Export a Controlled

Commodity, in violation of 18 U.S.C. § 371, (2) Violation of the Export Control Reform Act, in violation of 50 U.S.C. § 4819, (3) Smuggling Goods from the United States, in violation of 18 U.S.C. § 554, (4) Conspiracy to Commit International Money Laundering, 18 U.S.C. § 1956(h), and (5) Making a False Statement, in violation of 18 U.S.C. § 1001.  These charges are the result of an investigation by the United States Department of Homeland Security Investigations ("HSI"), the Federal Bureau of Investigation ("FBI"), and the United States Department of Commerce ("DOC").  These federal law enforcement agencies are investigating a conspiracy to illegally export from Connecticut to Russia a Jig Grinder, a dual-use export-controlled item that could be used for nuclear proliferation in Russia and other attendant crimes such as smuggling, money laundering, and making false statements to a U.S. government agency.

After the return of the Superseding Indictment, it was confirmed that Mr. Mamonovs was residing in Latvia, and the Government sought his arrest and extradition.  Mr. Mamonovs was detained by Latvian authorities on October 18, 2022.  And it is the Government's understanding that on October 20, 2022, he was released from detention by a Latvian judge pending extradition proceedings.  Mr. Mamonovs chose not to contest extradition and was ordered extradited.  Pursuant to that order, he appeared at the international airport in Riga, Latvia, on December 2, 2022, where U.S. Marshals Service personnel accompanied him on commercial flights as part of his extradition to the United States.  He arrived at Wyatt Correctional Center on December 2, 2022, and has been detained since that time.

Mr. Mamonovs had his initial appearance and arraignment before this Court on December 6, 2022. He had a bond hearing on December 12, 2022, which was continued to December 22, 2022.

## II. Legal Standard

Under the Bail Reform Act, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987).

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). As discussed below, the Government's primary concern is that, should Mr. Mamonovs be released, conditions are put in place that reasonably assure his appearance as required.

## III. Discussion

As set forth below, the factors to be considered in the detention analysis show that the defendant presents a substantial risk of flight that must be mitigated by appropriate conditions

that reasonably assure his appearance. The Government does not believe that Mr. Mamonovs presents a significant risk to the safety of community members. As such, the factors related to community safety will not be discussed below. The Court must also consider both Mr. Mamonovs' lack of legal status and the timing of his release.

### A. Nature and Circumstances of the Offense and Weight of the Evidence

The offenses with which Mr. Mamonovs is charged are serious. Mr. Mamonovs faces five felony counts, two of which include a maximum term of imprisonment of up to 20 years. Although it is true, as the defense notes in an aside, that the charges against Mr. Mamonovs "will not necessarily result in any prison sentence even if Mr. Mamonovs is convicted," it must also be acknowledged that a period of incarceration given the seriousness of the offenses is quite possible. And risk of flight by a defendant on pretrial release stems from the defendant's perception of the possibility of jail time, not the actual imposition of a prison sentence.

Mr. Mamonovs served as the sole Director of the company purported to be the buyer and ultimate end user of the Jig Grinder. In this role, Mr. Mamonovs signed various letters and a declaration to facilitate the export of the Jig Grinder. A Jig Grinder is precision grinding tool. The Jig Grinder purchased in this case can be used for both civilian purposes and can be exported to EU countries, such as Latvia, for such use without a license, but can also be used as a tool in a nuclear weapons program. As such, it is a dual-use export-controlled item that cannot be exported to Russia without a license.

Although the Government understands that the Court views the weight of the evidence in this case as likely the least significant factor, the evidence includes a signed declaration by Mr.

Mamonovs to the DOC stating that the Jig Grinder would not be reexported from Latvia and signed letters from Mr. Mamonovs to the DOC stating that the ultimate destination for the Jig Grinder was Riga, Latvia, that Mr. Mamonovs' company would be the ultimate end user of the Jig Grinder, and that the Jig Grinder would not be resold.  From the very beginning, the conspiracy intended to purchase the Jig Grinder in order to illegally export it to Russia.

      B.   **The History and Characteristics of the Defendant**

Mr. Mamonovs is a citizen and resident of Latvia.  The Government understands that he resides in Latvia with his wife and two young children.  As such, he has significant family and other ties outside the United States.  In fact, it is the Government's understanding that essentially all of Mr. Mamonovs' ties are to that community.[1]  Although Mr. Mamonovs, by signing false letters and a false declaration, directed his criminal activity to the District of Connecticut, he lacks any community or family ties to this district.  He also lacks legal status in the United States and would be subject to removal after serving his sentence.  These factors all counsel against release and for stringent bond conditions.

The Government is unaware of any criminal record for Mr. Mamonovs.  And, as noted, Mr. Mamonovs did not contest extradition and did appear as ordered at the airport for his extradition flight.  These suggest a reduced risk of flight.

---

[1] It is the Government's understanding that Mr. Mamonovs is no longer seeking his release on personal recognizance with permission to travel back to Latvia.  Nevertheless, the Government would oppose permitting Mr. Mamonovs to return to Latvia.  Given that Latvia would be outside of the Court's and Government's jurisdictional authority, there would be no way, reasonable or otherwise, to assure that Mr. Mamonovs would appear as required.

The reduced risk of flight, nevertheless, is a significant risk. His lack of a criminal record, as far as the Government is aware, means that Mr. Mamonovs' only previous experience with detention is the two days he was held in custody in Latvia from his arrest on October 18, 2022, until he was ordered released pending extradition on October 20, 2022. Having now been detained far from home for about three weeks, Mr. Mamonovs may be far more compelled to avoid a lengthy term of imprisonment in the United States. Today, he may not have made the decision not to contest extradition and to appear at the airport for his extradition flight as ordered. Moreover, while the extradition process in various jurisdictions can be lengthy and is burdensome, it appears that Latvia is moving quickly in this case. The Government is aware that at least one of Mr. Mamonovs' Latvian co-defendants has been ordered extradited despite contesting extradition. Mr. Mamonovs was represented by counsel in Latvia for the arrest and extradition, and Mr. Mamonovs' decision not to contest extradition may have simply been a strategic choice based on counsel's advice that extradition was a *fait accompli*.

### C. Mamonovs' Bond Proposal

Mr. Mamonovs' bond proposal includes five elements:

1) An appearance bond signed by Mr. Mamonovs and Andris Lapins
2) A requirement that Mr. Mamonovs reside with Mr. Lapins
3) A requirement that Mr. Lapins serve as a third-party custodian
4) A requirement that Mr. Mamonovs not leave the Western District of Washington
5) A requirement that Mr. Mamonovs surrender his passport and not obtain any new passport

Unfortunately, the Government submits that this proposal is insufficient as it once again does not reasonably assure Mr. Mamonovs' appearance as required.  As presented, the proposal's barriers to flight, the consequences to dissuade flight, and the monitoring to ensure that the defendant does not flee are all insufficient.  For example, as to barriers to flight, the only barrier to flight presented is that Mr. Mamonovs surrender his passport to counsel.  Yet, the Government and Court would have no way to know whether Mr. Mamonovs or members of his family apply for a second or replacement passport in Latvia that he could receive in the Western District of Washington.  The requirements that Mr. Mamonovs reside with Mr. Lapins in the Western District of Washington and that he not travel outside that district are not real barriers to flight.  In fact, if anything, Mr. Mamonovs residing in the Western District of Washington would put him in close proximity to a major, foreign, international airport (Vancouver).  Although the Government may be able to put precautions in place to assure that Mr. Mamonovs is not able to take an international flight out of the United States, it is unlikely that the Government would get any information regarding a plan to cross the border to Canada and fly from Vancouver.

The only consequence to such flight from prosecution would be the forfeiture of the appearance bond signed by Mr. Mamonovs and Mr. Lapins.  Such forfeiture would not sufficiently deter or dissuade flight.  As far as the Government is aware, Mr. Mamonovs does not possess any assets outside of Latvia or significant assets in Latvia.  The Government would not be able to recover the appearance bond from Mr. Mamonovs should he abscond.  As to Mr. Lapins, the cosigner, it is not clear that Mr. Mamonovs relationship with Mr. Lapins is significant enough that causing a significant financial loss to Mr. Lapins would otherwise

dissuade Mr. Mamonovs from flight. The Government's understanding is that Mr. Lapins is Mr. Mamonovs' mother's cousin. As such, Mr. Lapins is a fairly distant relative both physically/geographically and familially/emotionally. In the face of Mr. Mamonovs' desire to return home to his mother, wife, and young children, the counterbalance of the financial harm he may cause to a distant relative is unlikely to be sufficient suasion.

      Finally, the monitoring of Mr. Mamonovs to prevent flight is insufficient. The appointment of Mr. Lapins as a third-party custody is a first step. Mr. Lapins may be able to detect Mr. Mamonovs either considering flight or taking steps in preparation and should be required to alert the Court regarding such observations. And he would have a financial interest in preventing successful flight by Mr. Mamonovs. Nevertheless, Mr. Lapins cannot and will not be required to watch Mr. Mamonovs around the clock, every day. Although Mr. Lapins is retired and, thus, likely has sufficient time to devote to his role as a third-party custodian, he will likely still live his life, which may include his own travel and significant periods of time out of the home. Finally, while a third-party custodian may be able to note changes or problems over time, he does not serve the role of a prison guard standing watch during the night to ensure that an inmate does not escape. A determined defendant could and will find an opportunity to escape from even the most vigilant third-party custodian. Location monitoring would help, but again, location monitoring bracelet and can be cut off should a defendant choose to attempt flight. More needs to be done to enact barriers to flight, to strengthen the consequences of flight, and to expand the scope of monitoring. As formulated, Mr. Mamonovs' proposal is insufficient to reasonably assure his appearance when required.

## IV. Lack of Legal Status and Timing

When Mr. Mamonovs was extradited from Latvia, he entered the United States on special parole that was extended for two days.  That has now expired.  It is the Government's understanding that the Department of Homeland Security is unlikely to extend or otherwise revive special parole for Mr. Mamonovs.  As such, should Mr. Mamonovs be ordered released on conditions, he would lack legal status in the U.S.  It is the Government's understanding that in such circumstances, USMS would notify ICE that a defendant lacking legal status may be released.  And ICE would make the determination whether to lodge a detainer.  ICE lodging a detainer would not only prevent Mr. Mamonovs' release on conditions, but would also begin deportation proceedings.  Given the efforts undertaken by the Government to secure Mr. Mamonovs extradition, his potential deportation before the conclusion of the criminal case would be an outrageous turn of events.  Thus, a plan needs to be in place to ensure that such immigration consequences are avoided.

Similarly, before any release, the Court should inquire how and when Mr. Mamonovs plans to travel.  As noted, Mr. Mamonovs has no ties to this district.  Thus, his release should be timed to coincide with verified travel plans to the Western District of Washington, should the Court decide to proceed this way.

## CONCLUSION

For the foregoing reasons, the Court should carefully review and bond proposal by Mr. Mamonovs to ensure that it reasonably assures his appearance as required.  Moreover, the Court

should consider appropriate timing for Mr. Mamonovs' release including to ensure that any immigration consequences are avoided and, should the Court order his release and require Mr. Mamonovs to reside in the Western District of Washington, that Mr. Mamonovs is prepared to and able to travel to that destination at the time of release.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

_____
KONSTANTIN LANTSMAN
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv10692
United States Attorney's Office
District of Connecticut
157 Church Street
New Haven, CT 06510
(203) 821-3700

**CERTIFICATION**

      I hereby certify that on December 12, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____
KONSTANTIN LANTSMAN
ASSISTANT UNITED STATES ATTORNEY